IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

**FILED**

OCT 0 3 2003

LARRY W. PROPES, CLERK
COLUMBIA, S.C.

| | |
|---|---|
| Corey T. Welchlin, D.O. and Richard W. Banks, D.O., on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>Tenet Healthcare Corporation, d/b/a Hilton Head Regional Medical Center and Clinics, a/k/a Hilton Head Hospital; Tenet Healthsystem Hilton Head, Inc., d/b/a Hilton Head Regional Medical Center and Clinics, a/k/a Hilton Head Hospital; Tenet South Carolina, Inc., d/b/a Hilton Head Regional Medical Center and Clinics, a/k/a Hilton Head Hospital; AMISUB (Hilton Head), Inc., d/b/a Hilton Head Regional Medical Center and Clinics, a/k/a Hilton Head Hospital; Hilton Head Health System, L.P., d/b/a Hilton Head Regional Medical Center and Clinics, a/k/a Hilton Head Hospital; AMISUB Development of South Carolina, Inc., d/b/a Hilton Head Regional Medical Center and Clinics, a/k/a Hilton Head Hospital; Tenet Healthsystem Medical, Inc., d/b/a Hilton Head Regional Medical Center and Clinics, a/k/a Hilton Head Hospital; Board of Governors of Hilton Head Regional Medical Center and Clinics; Medical Executive Committee of Hilton Head Regional Medical Center and Clinics; Dennis Bruns; George Warner, M.D.; and the Medical Staff of Hilton Head Regional Medical Center and Clinics,<br><br>       Defendants. | Civil Action No.<br><br>**9 03 3162 23**<br><br><br>**NOTICE OF REMOVAL** |

1.    Pursuant to 28 U.S.C. §§ 1331, 1332, and 1446, Defendants Tenet Healthcare Corporation, d/b/a Hilton Head Regional Medical Center and Clinics, a/k/a Hilton Head Hospital; Tenet Healthsystem Hilton Head, Inc., d/b/a Hilton Head Regional Medical Center and Clinics, a/k/a Hilton Head Hospital; Tenet South Carolina, Inc., d/b/a Hilton Head Regional Medical Center and Clinics, a/k/a Hilton Head Hospital; AMISUB (Hilton Head), Inc., d/b/a Hilton Head Regional Medical Center and Clinics, a/k/a Hilton Head Hospital; Hilton Head Health System, L.P., d/b/a Hilton Head Regional Medical Center and Clinics, a/k/a Hilton Head Hospital; AMISUB Development of South Carolina, Inc., d/b/a Hilton Head Regional Medical Center and Clinics, a/k/a Hilton Head Hospital; Tenet Healthsystem Medical, Inc., d/b/a Hilton Head Regional Medical Center and Clinics, a/k/a Hilton Head Hospital; Board of Governors of Hilton Head Regional Medical Center and Clinics; and Dennis Bruns file their Notice of Removal of the above-captioned action from the Court of Common Pleas for Beaufort County, State of South Carolina, to the United States District Court for the District of South Carolina, Beaufort Division.

2.    The above-captioned action was filed by the Plaintiffs in the Court of Common Pleas for Beaufort County, State of South Carolina, and is now pending as Civil Action No. 03-CP-07-1622.  Defendants received a copy of the Summons and Complaint on or after September 3, 2003 and a copy of the Amended Summons and Complaint on September 26, 2003.

3.    The District Court of the United States has original jurisdiction over this action because it involves a question of federal law and because, upon information and belief, the Plaintiffs and Defendants are citizens of different states and the amount in controversy in this action exceeds the sum of $75,000.00, exclusive of interest and costs.

4.    The Co-Defendants Medical Executive Committee of Hilton Head Medical Center and Clinics, George Warner, M.D., and the Medical Staff of Hilton Head

2

Medical Center and Clinics consent to the removal of this action and will timely file a separate

Consent to Removal pleading with the Court.

5.    Defendants file together with this Notice, a copy of all process,

pleadings and orders served upon it in this action, attached as Exhibit A.

6.    Defendants have provided a copy of the Notice of Removal to the Clerk

of Court for Beaufort County.

NELSON MULLINS RILEY & SCARBOROUGH, L.L.P.

By: _____

Stuart M. Andrews, Jr.; Fed. ID No. 1099
E-mail: SMA@nmrs.com
Travis Dayhuff, Fed. ID No. 7177
E-mail: TXD@nmrs.com
1330 Lady Street, Third Floor
Post Office Box 11070 (29211)
Columbia, SC  29201
(803) 799-2000

Attorneys for Defendants Tenet Healthcare Corporation, d/b/a
Hilton Head Regional Medical Center and Clinics, a/k/a Hilton
Head Hospital; Tenet Healthsystem Hilton Head, Inc., d/b/a
Hilton Head Regional Medical Center and Clinics, a/k/a Hilton
Head Hospital; Tenet South Carolina, Inc., d/b/a Hilton Head
Regional Medical Center and Clinics, a/k/a Hilton Head
Hospital; AMISUB (Hilton Head), Inc., d/b/a Hilton Head
Regional Medical Center and Clinics, a/k/a Hilton Head
Hospital; Hilton Head Health System, L.P., d/b/a Hilton Head
Regional Medical Center and Clinics, a/k/a Hilton Head
Hospital; AMISUB Development of South Carolina, Inc., d/b/a
Hilton Head Regional Medical Center and Clinics, a/k/a Hilton
Head Hospital; Tenet Healthsystem Medical, Inc., d/b/a Hilton
Head Regional Medical Center and Clinics, a/k/a Hilton Head
Hospital; Board of Governors of Hilton Head Regional Medical
Center and Clinics; and Dennis Bruns

Columbia, South Carolina

_____Oct. 3_____, 2003

3

STATE OF SOUTH CAROLINA

COUNTY OF BEAUFORT

COREY T. WELCHLIN, D.O. and
RICHARD W. BANKS, D.O.,
on behalf of themselves and all others
similarly situated,

              Plaintiffs,

   vs.

TENET HEALTHCARE CORPORATION,
d/b/a HILTON HEAD REGIONAL
MEDICAL CENTER AND CLINICS, a/k/a
HILTON HEAD HOSPITAL; TENET
HEALTHSYSTEM HILTON HEAD, INC.,
d/b/a HILTON HEAD REGIONAL
MEDICAL CENTER AND CLINICS, a/k/a
HILTON HEAD HOSPITAL; TENET
SOUTH CAROLINA, INC. d/b/a HILTON
HEAD REGIONAL MEDICAL CENTER
AND CLINICS, a/k/a HILTON HEAD
HOSPITAL; AMISUB (HILTON HEAD),
INC., d/b/a HILTON HEAD REGIONAL
MEDICAL CENTER AND CLINICS a/k/a
HILTON HEAD HOSPITAL; HILTON
HEAD )
HEALTH SYSTEM, L.P., d/b/a HILTON
HEAD REGIONAL MEDICAL CENTER
AND CLINICS, a/k/a HILTON HEAD
HOSPITAL; BOARD OF GOVERNORS
OF HILTON HEAD MEDICAL CENTER
AND CLINICS; MEDICAL EXECUTIVE
COMMITTEE OF HILTON HEAD
MEDICAL CENTER AND CLINICS;
DENNIS BRUNS; GEORGE WARNER,
M.D.; And the MEDICAL STAFF OF
HILTON HEAD MEDICAL CENTER AND
CLINICS,

              Defendants.

)IN THE COURT OF COMMON PLEAS

Case No.: _03-CP-07-1622_

**CIVIL COVER SHEET**

BEAUFORT COUNTY
CLERK OF COURT
BEAUFORT, S.C.

2003 SEP -2 AM 11: 45

The cover sheet and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated.

**A copy of this Cover Sheet must be served on the defendant(s) along with the Summons and Complaint.**

**NATURE OF ACTION:** (check one category for the main cause of action)

( ) TORT - Motor Vehicle
( ) TORT - Professional Malpractice
(x) TORT - Unfair Trade Practices, Other Economic or Business-Related Wrongs
( ) TORT - Products Liability
( ) TORT - General or Other
( ) PCR
( ) GOV/ADM - Workers Comp
( ) GOV/ADM - General or Other

( ) CONTRACT - Debt Collection
( ) CONTRACT - Employment
( ) CONTRACT - Construction
( ) CONTRACT - Wrongful Breach
( ) CONTRACT - General or Other
( ) REAL PROPERTY
( ) MINOR SETTLEMENTS
( ) DOMESTIC FOREIGN JUDGMENT
( ) OTHER (Please Describe)

**JURY DEMAND (x) YES ( ) NO**

Note: Information requested on this form is preliminary in nature, and for administrative purposes only. The response to this request for information on jury demand merely indicates a likelihood that a jury trial will or will not be requested and does not constitute a demand for or a waiver of trial by jury pursuant to applicable rules or statutes.

**DOCKETING INFORMATION** (Check one box.)

( ) This case is subject to **arbitration** (all cases with monetary damages less than $25,000 are subject to arbitration, unless otherwise exempt).
(x) This case is subject to **mediation** (all cases not subject to arbitration must be mediated, unless otherwise exempt.)
( ) This case is exempt from ADR, and certificate is attached.

Date: September __2__, 2003 Signed: _____

**SEE REVERSE SIDE FOR FURTHER IMPORTANT INFORMATION**

2

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS,
UNLESS OTHERWISE EXEMPT.
**You are required to take the following action(s):**
1. The parties shall select a neutral within 210 days of the filing of this action, and the Plaintiff shall file a Stipulation of Neutral Selection@ on or before the 224th day after the filing of the action. If the parties cannot agree upon the selection of the neutral within 210 days, the Plaintiff shall notify the Court by filing a written Request for the Appointment of a Neutral@ on or before the 224th day after the filing of this action. The Court shall then appoint a neutral from the Court-approved mediator/arbitrator list.
2. The initial ADR conference must be held within 300 days after the filing of this action.
3. Cases are exempt from ADR only upon the following grounds:
(a) Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;
(b) Cases which are appellate in nature such as appeals or writs of certiorari;
(c) Post conviction relief matters;
(4) Contempt of Court proceedings;
(5) Forfeiture proceedings brought by the State;
(6) Cases involving mortgage foreclosures; and
(7) Cases that have been submitted to mediation with a certified mediator prior to the filing of this action.
4. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.
**Please note: You must comply with the Supreme Court Rules regarding ADR. Failure to do so may affect your case or may result in sanctions.**

IN THE STATE OF SOUTH CAROLINA | )IN THE COURT OF COMMON PLEAS

IN THE COUNTY OF BEAUFORT

Case No.:  03·CP-07-1622

COREY T. WELCHLIN, D.O.
and RICHARD W. BANKS, D.O.,
on behalf of themselves and all others
similarly situated,

Plaintiffs,

vs.

TENET HEALTHCARE CORPORATION,
d/b/a HILTON HEAD REGIONAL MEDICAL
CENTER AND CLINICS, a/k/a HILTON
HEAD HOSPITAL; TENET HEALTHSYSTEM
HILTON HEAD, INC., d/b/a HILTON HEAD
REGIONAL MEDICAL CENTER AND
CLINICS, a/k/a HILTON HEAD HOSPITAL;
TENET SOUTH CAROLINA, INC. d/b/a
HILTON HEAD REGIONAL MEDICAL
CENTER AND CLINICS, a/k/a HILTON
HEAD HOSPITAL; AMISUB (HILTON HEAD),
INC., d/b/a HILTON HEAD REGIONAL
MEDICAL CENTER AND CLINICS a/k/a
HILTON HEAD HOSPITAL; HILTON HEAD
HEALTH SYSTEM, L.P., d/b/a HILTON HEAD
REGIONAL MEDICAL CENTER AND
CLINICS, a/k/a HILTON HEAD HOSPITAL;
BOARD OF GOVERNORS OF HILTON HEAD
MEDICAL CENTER AND CLINICS; MEDICAL
EXECUTIVE COMMITTEE OF HILTON HEAD
MEDICAL CENTER AND CLINICS;
DENNIS BRUNS; GEORGE WARNER, M.D.;
And the MEDICAL STAFF OF HILTON HEAD
MEDICAL CENTER AND CLINICS,

Defendants.

**SUMMONS**

TO:  EACH OF THE DEFENDANTS ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to respond to the Complaint of the Plaintiffs, a copy of which is herewith served upon you, and to appear and defend by

BEAUFORT, S.C.

BEAUFORT COUNTY

2003 SEP -2  AM 11:45

serving a copy of your Answer or other responsive pleading on the subscriber at his office at Barnwell Whaley Patterson & Helms, LLC, 885 Island Park Drive, P. O. Drawer H, Charleston, SC 29402 within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to answer or otherwise respond to the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

BARNWELL WHALEY PATTERSON & HELMS, LLC

BY: _____

Gerald E. DeLoss, Esquire
885 Island Park Drive (29492)
P. O. Drawer H
Charleston, SC 29402
(843) 577-7700
(843) 577-7708 (fax)

**ATTORNEY FOR PLAINTIFFS**

DATED: September 2, 2003
Charleston, South Carolina

2

| | | |
|---|---|---|
| IN THE STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| IN THE COUNTY OF BEAUFORT | ) | Case No.: 03-CP-07-1622 |
| COREY T. WELCHLIN, D.O.<br>and RICHARD W. BANKS, D.O.,<br>on behalf of themselves and all others<br>similarly situated, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| TENET HEALTHCARE CORPORATION,<br>d/b/a HILTON HEAD REGIONAL MEDICAL<br>CENTER AND CLINICS, a/k/a HILTON<br>HEAD HOSPITAL; TENET HEALTHSYSTEM<br>HILTON HEAD, INC., d/b/a HILTON HEAD<br>REGIONAL MEDICAL CENTER AND<br>CLINICS, a/k/a HILTON HEAD HOSPITAL;<br>TENET SOUTH CAROLINA, INC. d/b/a<br>HILTON HEAD REGIONAL MEDICAL<br>CENTER AND CLINICS, a/k/a HILTON<br>HEAD HOSPITAL; AMISUB (HILTON HEAD),<br>INC., d/b/a HILTON HEAD REGIONAL<br>MEDICAL CENTER AND CLINICS a/k/a<br>HILTON HEAD HOSPITAL; HILTON HEAD<br>HEALTH SYSTEM, L.P., d/b/a HILTON HEAD<br>REGIONAL MEDICAL CENTER AND<br>CLINICS, a/k/a HILTON HEAD HOSPITAL;<br>BOARD OF GOVERNORS OF HILTON HEAD<br>MEDICAL CENTER AND CLINICS; MEDICAL<br>EXECUTIVE COMMITTEE OF HILTON HEAD<br>MEDICAL CENTER AND CLINICS;<br>DENNIS BRUNS; GEORGE WARNER, M.D.;<br>And the MEDICAL STAFF OF HILTON HEAD<br>MEDICAL CENTER AND CLINICS, | ) | **COMPLAINT**<br>**(Jury Trial Demanded)** |
| Defendants. | ) | |

The Plaintiffs, on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, allege and state as follows:

BEAUFORT, S.C.<br>CLERK OF COURT<br>BEAUFORT COUNTY<br>2003 SEP -2 AM 11:45

1.    Plaintiff Corey T. Welchlin is an osteopathic physician, duly licensed to practice medicine in the State of South Carolina, is Board Certified by the American Osteopathic Board of Orthopedic Surgery, is a member of the American Osteopathic Academy of Sports Medicine, and has practiced medicine for over 15 years.

2.    Plaintiff Richard W. Banks is an osteopathic physician, duly licensed to practice medicine in the State of South Carolina, is Board Certified by the American Osteopathic Board of Orthopedic Surgery, and has practiced medicine for over 20 years.

3.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other individuals who are or were osteopathic physicians and whom applied for or could have applied for Medical Staff privileges with Defendants and/or were denied Medical Staff privileges, as a direct result of Defendants' unlawful, intentional, and/or knowing conduct, all as more fully set forth below.

4.    Upon information and belief, Tenet Healthcare Corporation conducts business as Hilton Head Regional Medical Center and Clinics on Hilton Head Island, South Carolina, which is also known as Hilton Head Hospital (hereinafter referred to as the "Hospital"). "Tenet Healthcare Corporation" is not a corporate entity registered with the Secretary of State to conduct business in the State of South Carolina. The Hospital holds the dominant position and market share for the delivery of healthcare services in the relevant market area.

5.    Upon information and belief, Tenet Healthsystem Hilton Head, Inc. conducts business as Hilton Head Regional Medical Center and Clinics on Hilton Head Island, South Carolina, which is also known as Hilton Head Hospital (hereinafter jointly referred to as the "Hospital"). The Hospital holds the dominant position and market share for the delivery of healthcare services in the relevant market area.

2

6.    Upon information and belief, Tenet South Carolina, Inc. conducts business as Hilton Head Regional Medical Center and Clinics on Hilton Head Island, South Carolina, which is also known as Hilton Head Hospital (hereinafter jointly referred to as the "Hospital"). The Hospital holds the dominant position and market share for the delivery of healthcare services in the relevant market area.

7.    Upon information and belief, AMISUB (Hilton Head), Inc. conducts business as Hilton Head Regional Medical Center and Clinics on Hilton Head Island, South Carolina, which is also known as Hilton Head Hospital (hereinafter jointly referred to as the "Hospital"). The Hospital holds the dominant position and market share for the delivery of healthcare services in the relevant market area.

8.    Upon information and belief, Hilton Head Health System, L.P. conducts business as Hilton Head Regional Medical Center and Clinics on Hilton Head Island, South Carolina, which is also known as Hilton Head Hospital (hereinafter jointly referred to as the "Hospital").  The Hospital holds the dominant position and market share for the delivery of healthcare services in the relevant market area.

9.    Upon information and belief, the Board of Governors of Hilton Head Medical Center and Clinics is the governing body of the Hospital and is located and conducts business on Hilton Head Island, South Carolina (hereinafter referred to as the "Board").

10.    Upon information and belief, the Medical Executive Committee of Hilton Head Medical Center and Clinics is the Executive Committee of the Medical Staff of the Hospital and is located and conducts business on Hilton Head Island, South Carolina.

11.    Dennis Bruns is the Chief Executive Officer of the Hospital, and, upon information and belief, conducts business on Hilton Head Island, South Carolina.

3

12. Upon information and belief, George Warner, M.D. is the Chief of Staff of the Hospital, and, conducts business Hilton Head Island, South Carolina.

13. The Medical Staff of Hilton Head Medical Center and Clinics is comprised of duly licensed physicians, dentists, and podiatrists designated by the Board, who have been appointed to the Medical Staff and granted Clinical Privileges by the Board to render specific services to the Hospital and conducts business on Hilton Head Island, South Carolina (hereinafter the "Medical Staff.")

14. On or about December 2001, Dr. Welchlin applied for appointment to the Medical Staff at the Hospital by requesting an application form and materials from the Hospital, in accordance with the Medical Staff Bylaws. On or about, January 10, 2002, Dr. Welchlin submitted the completed application for appointment to the Hospital, again as specified in the Medical Staff Bylaws. Upon information and belief, Dr. Welchlin satisfied all legal and valid requirements imposed for Medical Staff appointment as set forth in the Medical Staff Bylaws.

15. On or about December 2001, Dr. Banks applied for appointment to the Medical Staff at the Hospital by requesting an application form and materials from the Hospital, in accordance with the Medical Staff Bylaws. On or about, January 21, 2002, Dr. Banks submitted the completed application for appointment to the Hospital, again as specified in the Medical Staff Bylaws. Upon information and belief, Dr. Banks satisfied all legal and valid requirements imposed for Medical Staff appointment as set forth in the Medical Staff Bylaws.

16. On or about February 2002, Defendants returned to Plaintiffs their applications for appointment to the Medical Staff. Shortly thereafter, Plaintiffs resubmitted their applications to Defendants.

4

17. On or about October 14, 2002, Plaintiffs received a letter from Dennis Bruns which was addressed to their Practice Administrator, a copy of which is attached hereto as **Exhibit "A,"** in which Plaintiffs' applications for appointment were rejected. Attached to the applications was a check which was to pay for the cost of the application fee. This check was returned to Plaintiffs and was not cashed or deposited by Defendants. The sole reason for the rejection of the applications was:

> I understand from my staff that Drs. Banks and Welchlin may not be board certified or eligible. This would be the basis for returning their respective applications.

(Bruns' Letter of 10/14/02, **Exhibit "A"**).

18. In the same letter of October 14, 2002, Mr. Bruns referred to a purported Medical Staff Bylaw requirement that all physician applicants be either board certified or eligible in a board recognized by the American Board of Medical Specialties (hereinafter referred to as "ABMS").

19. Under the Medical Staff Bylaws of the Hospital dated July 2001, the basic qualifications for membership on the Medical Staff included the following provision:

> Current certification and/or re-certification, without restriction, by the appropriate medical specialty board(s) recognized by the [ABMS], applicable to these Practitioner's Clinical Privileges, or to be eligible at the time of application for such certification and/or re-certification and to obtain such certification and/or re-certification within five years of eligibility; ..."

(Medical Staff Bylaws, July 2001 at p. 7).

Upon information and belief, the sole basis for the rejection of Plaintiffs' applications for Medical Staff membership was that Plaintiffs allegedly did not satisfy the aforementioned Bylaw provision regarding board certification and/or board eligibility by a board recognized by the ABMS.

20.    Upon information and belief, the Medical Staff Bylaws are adopted, approved, and amended by the Active Medical Staff.  The Medical Executive Committee has the responsibility and authority to review and formulate any addition or amendment to the Medical Staff Bylaws.  Amendments or additions voted upon by the Active Medical Staff only become effective when approved by the Board.  The Defendants, in their professional capacities, were each involved in, and responsible for, the illegal Bylaw provision set forth above, relating to board certification or eligibility.

21.    The Court is called upon to take judicial notice that osteopathic physicians or "D.O.s," and allopathic physicians or "M.D.s," have virtually the same pre-professional and professional training and education.  Both osteopaths and allopaths complete four years of basic medical education followed by approximately four to six years of residency training, or post-graduate medical training.  They are both licensed to perform surgery and prescribe medication in all 50 states. In addition, osteopathic physicians receive additional training above and beyond that required of allopathic physicians.  Plaintiffs received equivalent pre-professional and professional training as other physicians on the Medical Staff.

22.    The ABMS recognizes medical boards granting certifications to allopathic doctors ("M.D.s").  Correspondingly, osteopathic doctors ("D.O.s") are certified under Boards recognized by the American Osteopathic Association (hereinafter referred to as "AOA").  The AOA meets all of the same standards as an educational, accrediting, approval body, as does the ABMS.  The Federal government recognizes osteopathic physicians as equal and comparable to allopathic physicians under Federal laws and statutes governing the delivery of health care under Medicare and Medicaid.  South Carolina licensing laws and regulations also recognize osteopaths and allopaths as equivalent professionally.

23.    In addition to receiving equivalent education, osteopaths and allopaths practicing in orthopedic surgery receive equivalent post-graduate training. Plaintiffs received equivalent post-graduate training as other physicians on the Medical Staff.

24.    Under the Conditions of Participation for Hospitals in Federal Health Programs, a hospital must ensure the criteria for selection for appointment of a physician to its medical staff is based upon individual character, competence, training, experience and judgment, and must ensure that **under no circumstance is the accordance of staff membership or professional privileges in the hospital dependent solely upon certification, fellowship, or membership in a specialty body or society**. 42 C.F.R. § 482.12(a)(7) (emphasis added).

25.    Based upon the education requirements, post-graduate training, federal statutes and regulations, and state statutes and regulations, osteopaths and allopaths have been accorded equal professional status and hospitals across the country grant medical staff privileges to each group of physicians on an equal basis.

26.    Despite the overwhelming evidence of equivalency between osteopaths and allopaths, Defendants have refused to treat osteopaths equally and have specifically barred osteopaths who do not undergo post-graduate training through an allopathic program. Defendants have jointly and severally acted to prevent Plaintiffs from appointment to the Medical Staff and have critically and irreversibly damaged Plaintiffs' ability to treat patients or prospective patients and injured Plaintiffs' economic and professional abilities. Defendants took these actions intentionally, knowingly, grossly negligently and/or recklessly in an attempt to prevent osteopaths from practicing with the Hospital and/or obtaining Medical Staff privileges.

27.    Plaintiffs have demanded that they be granted the ability to submit information in support of their applications.  In addition, Plaintiffs have demanded that they be granted the right to appeal the decision to reject their applications and obtain review of the rejection of their applications.  These are rights which are purportedly set forth in the Hospital Medical Staff Bylaws.  Defendants have denied Plaintiffs the opportunity for any type of professional review hearing or procedure.  Furthermore, Defendants have not acted in the reasonable belief that their actions were in the furtherance of quality health care.  Defendants have not made even reasonable efforts to obtain the facts of the matter and Defendants have not provided Plaintiffs with adequate notice and hearing procedures.  Defendants' actions were primarily, if not completely, based upon Plaintiffs' association with osteopathic education, training, and residency programs and/or those sponsored or accredited by the AOA, or lack of association with allopathic education, training, and residency programs and/or those sponsored or accredited by the ABMS and related entities.  All such entities or programs are professional societies or associations.  Plaintiffs have either exhausted all administrative remedies available to them prior to commencing this lawsuit, or were barred from obtaining such relief by actions beyond their control.

## CLASS ACTION AND JURISIDICTIONAL ALLEGATIONS

28.    Plaintiffs reallege and restate the allegations of paragraphs 1 through 27 above, as if fully set forth herein.

29.    The named Plaintiffs bring this action on behalf of themselves and all other similarly situated osteopathic physicians who had applied for Medical Staff membership at the Hospital and were denied and/or who were otherwise eligible to apply for appointment to the Medical Staff at the Hospital, but did not or could not apply, or who were discouraged or

prevented from applying for appointment due to their lack of board certification or board eligibility by a board recognized by the ABMS.

30.     The named Plaintiffs seek certification of a class of all similarly situated osteopaths who either applied for membership to the Medical Staff at the Hospital, and/or who were eligible for membership at the Hospital, but for the restriction against physicians who were not board certified or board eligible by a board recognized by the ABMS, or who were otherwise discriminated against by Defendants based upon their osteopathic education, training, and/or licensure.

31.     The potential class is so numerous that joinder of all members is impracticable. The questions of law or fact relating to the class and eligibility for Medical Staff membership at the Hospital are common to the class.  The claims of Dr. Welchlin and Dr. Banks are typical of the claims of each of the members of the class in that each are osteopathic physicians seeking medical staff membership at the Hospital and were denied, or could be denied, based upon the Hospital Bylaw prohibiting Medical Staff membership for physicians not board certified or board eligible by a board recognized by the ABMS.  Dr. Welchlin, Dr. Banks and the undersigned counsel will fairly and adequately protect the interests of the class.  Finally, to the extent the Court deems this action to be seeking relief primarily other than injunctive relief, the amount in controversy with respect to each class member exceeds $100.00.

32.     The Court has jurisdiction over the subject matter and the parties, and venue is proper in Beaufort County, and this Court has the authority to certify, and should certify, this class.  Because the Plaintiffs were denied Medical Staff membership based upon their osteopathic training and education and/or purported lack of board certification or board

eligibility by a board recognized by the ABMS, they seek relief for themselves and all class members.

## AS TO DEFENDANT MEDICAL STAFF

### FOR A FIRST CAUSE OF ACTION
### Sherman Antitrust Act

33.   The Plaintiffs reallege and restate the allegations of Paragraphs 1 through 32 above, as if fully set forth herein.

34.   The medical providers, who joined together to form the Medical Staff of the Hospital, are legally separate and distinct economic entities who compete against each other. The Defendants engage in the practice of medicine and treat patients from all over the United States, such that their activities were within the flow of, and substantially affected, interstate trade and commerce.   The Medical Staff is in a position to control or limit the access of physicians who wish to apply for Medical Staff privileges by approving Bylaw provisions which limited or barred osteopathic physicians from joining the Medical Staff and engaging in other fraudulent, intentional, and knowing conspiracies to prevent osteopathic physicians from gaining Medical Staff privileges.

35.   The Medical Staff entered into a contract, combination, or conspiracy in the restraint of trade, which had an adverse impact upon interstate commerce.  Specifically, the Medical Staff conspired to bar osteopathic physicians and/or osteopathic physicians who did not and cannot become board certified and/or who did not and cannot become board eligible with a board recognized by the ABMS.  Upon information and belief, other wrongful conduct by the Medical Staff will be shown following discovery.  The Medical Staff took such actions in an attempt to prevent or limit competition for their own practices.

10

36.     The Medical Staff's conduct was such that, as a matter of law, it should be deemed a "group boycott" within the meaning of the Sherman Antitrust Act, 15 U.S.C. § 1, and the Court should deem the Medical Staff's illegal conduct as a "per se" violation of the antitrust statutes.  In addition, or in the alternative, the members of the Medical Staff were acting for their own benefit in discriminating against osteopaths, and, therefore, should be considered as a separate legal entity or entities entering into a contract, combination, or conspiracy in the restraint of trade which has an adverse impact or effect on interstate commerce.

37.     The Medical Staff conspired and combined to restrain trade by engaging in conduct including, but not limited to, the following and as will be shown through discovery:

    a.     Engaging in a group boycott, or concerted refusal to deal with osteopathic physicians and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS;

    b.     By drafting and adopting Bylaws which would prohibit or unreasonably limit osteopathic physicians and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS, from obtaining Medical Staff membership at the Hospital;

    c.     By creating an atmosphere hostile to osteopathic physicians and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS;

    d.     By only allowing certain osteopathic physicians to obtain Medical Staff membership at the Hospital by completing training and/or education with

11

an allopathic program, thereby preventing "true" osteopaths from practicing on the Medical Staff;

e.   By refusing to engage in any procedural review or hearing with respect to applications by osteopathic physicians and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS, including, but not limited to, the applications of Plaintiffs;

f.   By summarily denying applications received from osteopathic physicians and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS, such as Plaintiffs, without conducting any action in furtherance of quality care, or in a reasonable attempt to obtain the facts;

g.   By refusing to provide notice, hearing, or procedures to osteopathic physicians and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS, including Plaintiffs, who had applied for Medical Staff membership at the Hospital;

h.   By failing to obtain actual facts which would support a conclusion to deny the application for Medical Staff membership by an osteopathic physician and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS, such as Plaintiffs;

i.   By engaging in a policy of discrimination against Plaintiffs and other osteopaths and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS by applying unfair, unequal, and unreasonable procedures in reviewing their

12

applications; and such unequal treatment could reasonably be anticipated by the Defendants to cause osteopathic physicians to refrain from applying for Medical Staff membership at the Hospital; and

j.    By acting based upon a Medical Staff applicant's association with an osteopathic program or training and/or the AOA, or lack of association with an allopathic program or training and/or the ABMS or related entities, each of which are considered professional societies or associations.

The foregoing intentional, reckless, grossly negligent and/or wrongful conduct by the Medical Staff amounted to a group boycott or concerted refusal to deal, which are considered illegal, per se, under the Sherman Antitrust Act.

38.    The Medical Staff has no public service or ethical norm rationale for its discriminatory treatment of osteopaths.  As a result of the wrongful conduct of the Medical Staff, jointly and severally, Plaintiffs, and other osteopathic physicians similarly situated have been harmed, and/or will be harmed, and, therefore, request injunctive and declaratory relief against the Medical Staff to prohibit and prevent such harm.  Plaintiffs, on behalf of themselves and others similarly situated, respectfully request injunctive and declaratory relief as against Defendants to prevent and prohibit Defendants' illegal and unlawful activities.

39.    Under 15 U.S.C. § 15, any person who shall be injured in his business or property by reason of anything forbidden in the Antitrust Laws may sue therefor and shall recover three-fold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

13

40. The wrongful conduct of the Defendants as described above and as will be shown through discovery is directly related to the Plaintiffs' economic injury and the injury of all potential class members in their business, property, or profession. The Plaintiffs, on behalf of themselves and others similarly situated, are entitled to damages for Defendants' contract, combination, or conspiracy restraining trade, which had an adverse impact on interstate commerce.

41. Defendants' contract, combination, and conspiracy resulted in the following effects, among others:

    a.    Prices charged for medical services provided by Defendants were maintained at artificially high and non-competitive levels;

    b.    Osteopathic physicians were unable to compete effectively with Defendants and provide patients with a full and fair choice for medical services;

    c.    Patients were deprived of free and open competition for the provision of medical services; and

    d.    Osteopathic physicians were unable to pursue "pure" osteopathic educational institutions and/or residency programs, sponsored, accredited, or provided by the AOA or other osteopathic associations or societies.

42. Plaintiffs, on behalf of themselves and others similarly situated, are entitled to treble damages as provided by Federal law and the cost of suit, including reasonable attorney's fees as provided thereunder.

14

## AS TO ALL DEFENDANTS

### FOR A SECOND CAUSE OF ACTION
### South Carolina Antitrust Act

43.    Plaintiffs reallege and restate the allegations of paragraphs 1 through 42 above, as if fully set forth herein.

44.    The actions by and on behalf of the Medical Staff described above constitute an arrangement, contract, agreement, trust, or combination between two or more persons. In addition, Defendants Hospital, Board, Medical Executive Committee, Dennis Bruns, and Dr. Warner were directly and actively involved in the procedures, actions, and other misconduct which barred or limited osteopathic physicians and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS, from obtaining Medical Staff privileges. The concerted action of all Defendants amounted to an arrangement, contract, agreement, trust, or combination between two or more persons.

45.    The actions of Defendants were intended to, or actually did, lessen full and free competition for healthcare and related medical services and the costs and benefits associated with full and free competition. The actions impacted the public and the public's interest in healthcare and related medical services. The actions impacted the public and the public's interest in fostering medical education and training in osteopathic institutions, programs, societies, and associations.

46.    Defendants' actions directly and proximately caused injury to Plaintiffs, and other osteopathic physicians similarly situated.

47.    Plaintiffs, on behalf of themselves and other osteopathic physicians similarly situated, have been irreparably harmed and have no adequate remedy at law.

15

48.   Plaintiffs, on behalf of themselves and other osteopathic physicians similarly situated, are entitled to an injunction prohibiting Defendants from engaging in such unlawful and detrimental conduct and for their costs of bringing suit, including reasonable attorneys' fees.

### FOR A THIRD CAUSE OF ACTION
### Violation of the Hill-Burton Act

49.   The Plaintiffs reallege restate the allegations of paragraphs 1 through 48 above, as if fully set forth herein.

50.   Under the provisions of the Hill-Burton Act, 42 U.S.C. § 291, et seq., Federal funds are allotted to the States in order to assist them in carrying out programs for the construction and modernization of hospitals and other medical facilities. In order for a facility to receive Hill-Burton funds, the facility must provide assurances that, among other things, the facility, or portion thereof to be constructed or modernized, will be made available to all persons residing in a territorial area of the applicant facility. Under a separate section of the Hill-Burton Act, an action to effectuate compliance with any such assurance may be brought by a person other than the Secretary of Health and Human Services.

51.   Upon information and belief, Hospital and its predecessors received Hill-Burton Funds for the construction and/or modernization of that facility.

52.   All administrative requirements and other prerequisites to filing suit under the Hill-Burton Act have been satisfied or exhausted, or pursuing them would be futile.

53.   The actions and conduct by Defendants, as described above, amount to a violation of the Hospital's assurances that the facility, or a portion thereof, will be made available to all persons residing in the territorial area of the applicant, and amounts to a discriminatory attempt to prohibit or bar osteopathic physicians from practicing at the facility

16

in violation of the Hill-Burton Act.  Moreover, Defendants' violation of these assurances extends to both osteopathic physicians and their patients, because by denying Medical Staff membership to osteopathic physicians, Defendants are effectively denying the osteopathic physicians' patients access to the Hospital and to a full and fair choice for medical services.

54.    Based upon the misconduct of Defendants, Plaintiffs and other osteopathic physicians similarly situated, are left with no adequate remedy at law, and are irreparably harmed.  Accordingly, Plaintiffs, on behalf of themselves and others similarly situated, request an injunction against Defendants barring current and future violations of the Hill-Burton Act and the assurances required thereunder.

55.    In addition, or in the alternative, the activities of the Defendants, as described above, amount to an illegal restraint and violations of the assurances provided that the facility, or a portion thereof to be constructed to be modernized, be made available to all persons residing in the territorial area of the applicant.  Defendants' conduct directly and proximately damaged Plaintiffs.

56.    Pursuant to the provisions of the Hill-Burton Act, Plaintiffs, on behalf of themselves and other osteopathic physicians similarly situated, are entitled to damages against Defendants in an amount to be determined at trial for Defendants' violation of the Hill-Burton Act, and for reasonable attorneys' fees.

## FOR A FOURTH CAUSE OF ACTION
### Intentional Interference with Contractual Relations

57.    Plaintiffs reallege and restate the allegations of paragraphs 1 through 56 above, as if fully set forth herein.

58.    Defendants' wrongful conduct, as described above, amounted to intentional interference with the Plaintiffs' current and prospective contractual relations, based upon

17

improper purposes and/or by improper methods, as described above. The aforementioned improper purposes and/or improper methods, directly and proximately caused injury to Plaintiffs. Plaintiffs and other osteopathic physicians similarly situated had a protectible right with respect to their relationship with current and/or prospective patients. Defendants' wrongful conduct was not for purposes of Defendants' own pursuit of contractual rights with those third parties. The prospective and current contractual relations related to relationships with patients and prospective patients, which were terminated and/or lost, due to the wrongful conduct of Defendants. Defendants' actions were devious, improper and unrighteous.

59.    Based upon the wrongful conduct of Defendants in denying, prohibiting and interfering with Plaintiffs' current and/or prospective patients, Plaintiffs on behalf of themselves and other osteopathic physicians similarly situated have suffered irreparable harm for which they cannot be adequately made whole. Accordingly, Plaintiffs, on behalf of themselves and others similarly situated, respectfully request that the Court enter an Order granting them injunctive relief against Defendants prohibiting any wrongful interference with contractual relations and barring Defendants from utilizing the illegal means and procedures utilized by Defendants.

60.    In addition, or in the alternative, Plaintiffs, on behalf of themselves and others similarly situated, respectfully request the Court to enter an Order awarding them actual and punitive damages in an amount to be determined at trial for the loss of current and prospective patients.

18

## FOR A FIFTH CAUSE OF ACTION
### South Carolina Unfair Trade Practices Act

61.    Plaintiffs reallege and restate the allegations of paragraphs 1 through 60 above, as if fully set forth herein.

62.    Under the South Carolina Unfair Trade Practices Act ("SCUTPA"), South Carolina Code §§ 39-5-10, et seq., unfair methods of competition and unfair deceptive acts or practices in the conduct of any trade or commerce are declared unlawful. An action may be brought under SCUTPA and attorneys' fees may be awarded along with the costs of suit.

63.    The aforementioned enumerated actions by Defendants, in willfully and knowingly preventing or prohibiting Plaintiffs and other osteopathic physicians similarly situated from obtaining Medical Staff membership at the Hospital, amounted to an unfair or deceptive act or practice in the conduct of a trade or commerce as prohibited under SCUTPA. Specifically, said Defendants engaged in conduct that amounted to unfair methods of competition and deceptive practices in the conduct of the medical profession or trade, which, in turn, had a direct impact upon the public's interest in timely, effective, cost-efficient, and quality healthcare. Further, said Defendants' actions have the potential for repetition as they have occurred in the past and the Medical Staff Bylaws set forth a procedure that creates a definite potential for repetition of the unfair and deceptive acts.

64.    In accordance with the SCUTPA, Plaintiffs, on behalf of themselves and others similarly situated, are entitled to injunctive and/or declaratory relief against Defendants, jointly and severally, to prevent and prohibit current and future unfair methods of competition and unfair or deceptive acts or practices by Defendants.  Plaintiffs and others similarly situated are irreparably harmed and have no adequate remedy at law in order to make them whole. Further, Plaintiffs are entitled to their costs and attorneys' fees for bringing suit.

### FOR A SIXTH CAUSE OF ACTION
### Civil Conspiracy

65.    Plaintiffs reallege and restate the allegations of paragraphs 1 through 64 above, as if fully set forth herein.

66.    Two or more of Defendants combined and conspired for the purpose of injuring Plaintiffs and others similarly situated, by engaging in covert and overt conduct, including but not limited to those actions set forth above, and the following:

    a.    Conspiring to prevent Plaintiffs from practicing with Hospital;

    b.    Conspiring to prevent or limit Plaintiffs from providing treatment to patients, including follow-up care and treatment;

    c.    Conspiring to prevent Plaintiffs from competing with Defendants in the relevant market area; and

    d.    Conspiring to portray or represent to patients, potential patients, and the public that osteopathic physicians were "second class" providers, or were somehow less qualified to provide medical care.

67.    Defendants conspired to cause, and did proximately cause, special damages to Plaintiffs and others similarly situated in the form of loss of income, loss of wages, loss of

20

standing in the community, loss of ability to earn a living, and such other special damages as will be shown at trial.

68. Defendants' conspiracy involved overt and covert activities, including those set forth above, and those which will be shown by direct and circumstantial evidence following discovery.

69. Defendants' actions in furtherance of the conspiracy may have involved both lawful and unlawful acts, but in every case Defendants' object was to ruin or damage the business of Plaintiffs and others similarly situated.

70. Defendants' conspiracy involved acts pursuant to a common design, as described above, which was in furtherance of illegal and fraudulent activity and in a direct attempt to injure Plaintiffs.

71. As a result of Defendants' conspiracy, Plaintiffs were injured and suffered special damages. Accordingly, Plaintiffs request the Court to enter judgment jointly and severally against Defendants for Plaintiffs' damages related to such conspiracy.

WHEREFORE, the Plaintiffs pray that this Court certify this class, enter the declaratory and injunctive relief set forth above, award them and the class members damages, including interest on such amounts, treble damages where provided by statute, punitive damages, their attorney's fees and costs, and such other and further relief as the Court deems just and proper.

21

BARNWELL WHALEY PATTERSON & HELMS, LLC

BY: _____

Gerald E. DeLoss, Esquire
Myra V. Whitener, Esquire
885 Island Park Drive (29492)
P.O. Drawer H
Charleston, SC 29402
(843) 577-7700
(843) 577-7708 – Fax

ATTORNEYS FOR PLAINTIFFS

September 2, 2003
Charleston, South Carolina

22

Exhibit "A"

# HILTON HEAD MEDICAL CENTER AND CLINICS

**Smart Medicine. Special Treatment.**

*Dennis R. Bruns, FACHE*
*President and Chief Executive Officer*

October 14, 2002

Larry R. Boller, MBA
Low Country Orthopedics & Sports Medicine
South Island Square
841 William Hilton Parkway, Suite R
Hilton Head Island, South Carolina 29928

Re: Application for Staff Membership/Clinical Privileges
    Drs. Banks and Welchlin

Dear Mr. Boller:

Hilton Head Hospital has received your undated letter requesting information regarding the application for staff membership for Richard Banks, D.O. and Corey Welchlin, D.O. We have also received a call from one of Dr. Welchlin's and Dr. Banks' office staff in Minnesota inquiring about an application from each of them for locum tenens status.

The Bylaws of the Medical Staff include osteopathic physicians among those who may be awarded medical staff membership and clinical privileges at this Hospital. Article II, Section 2.A.4 of the Bylaws requires, however, that all physician applicants for privileges demonstrate current registration or recertification by a specialty board recognized by the American Board of Medical Specialties and applicable to the clinical privileges sought. A physician who is board eligible at the time of application may be considered for medical staff membership. Such physicians must obtain certification or recertification within five (5) years of achieving eligibility.

An individual seeking temporary privileges for locum tenens coverage must satisfy all of the qualifications for medical staff membership set forth in Article II, Section 2 of the Bylaws. This would include the requirement for board certification or board eligibility as the case may be.

I understand from my staff that Drs. Banks and Welchlin may not be board certified or eligible. This would be a basis for returning their respective applications.

I trust this letter is responsive to your inquiry. Please contact me if you have questions.

I remain,

Very truly yours

Dennis Bruns
Chief Executive Officer

cc: Dr. George Warner, Chief of Staff



25 Hospital Center Boulevard • P.O. Box 21117 • Hilton Head Island, SC 29926 • (843) 689-8206 • Fax (843)681-9659
E-mail: denny.bruns@tenethealth.com

ERLB-0193602.01-JRMARKR
October 11, 2002  2:40 PM

# BARNWELL WHALEY
# PATTERSON & HELMS, LLC
ATTORNEYS AND COUNSELORS AT LAW
FOUNDED 1938

885 Island Park Drive (29492)
P.O. Drawer H
Charleston, SC 29402-0197
Telephone: (843) 577-7700
Facsimile: (843) 577-7708
Writer's Direct E-Mail:
gdeloss@barnwell-whaley.com

William C. Helms, III
M. Dawes Cooke, Jr.
B. C. Killough †
Thomas B. Pritchard
James H. Elliott, Jr.

J. Gail Rahn
Mark C. Brandenburg
Wendy J. Keefer
Todd M. Musheff
Gerald E. DeLoss
P. Gunnar Nistad

Lucinda Gardner Wichmann
Phillip S. Ferderigos
Andrea H. Brisbin
K. Michael Barfield
Myra V. Whitener

† Registered Patent Attorney

Robert A. Patterson
Nathaniel B. Barnwell (1877-1950)
Ben Scott Whaley (1909-1987)
Samuel J. Corbin (1907-1975)

September 17, 2003

2273.008
**Certified Mail – Return Receipt Requested/Delivery Restricted to Addressee**
Dr. Claudia Venable
740 Starlight Lane
Atlanta, GA 30342

RE:    Welchlin, et al. v. Tenet Healthcare Corp., et al.
Case No.:  03-CP-07-1622
Our File No.:  2273.008

Dear Dr. Venable:

Enclosed for service upon you, please find a file-stamped copy of the Summons and Complaint for the above-referenced matter.

Please feel free to contact me if you have any questions.

With best regards, I am

Very truly yours,

Gerald E. DeLoss

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dr. Claudia Venable
140 Starlight Lane
Atlanta, Ga. 30342

2. Article Number
(Transfer from service label)

7001 1140 0003 6559 6486

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Claudia V Venable_   ☑ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Claudia V Venable   9/24/03

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☑ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

# BARNWELL WHALEY
# PATTERSON & HELMS, LLC

ATTORNEYS AND COUNSELORS AT LAW
FOUNDED 1938

885 Island Park Drive (29492)
P.O. Drawer H
Charleston, SC 29402-0197
Telephone: (843) 577-7700
Facsimile: (843) 577-7708
Writer's Direct E-Mail:
gdeloss@barnwell-whaley.com

William C. Helms, III
M. Dawes Cooke, Jr.
B. C. Killough †
Thomas B. Pritchard
James H. Elliott, Jr.

J. Gail Rahn
Mark C. Brandenburg
Wendy J. Keefer
Todd M. Musheff
Gerald E. DeLoss
P. Gunnar Nistad

Lucinda Gardner Wichmann
Phillip S. Ferderigos
Andrea H. Brisbin
K. Michael Barfield
Myra V. Whitener

† Registered Patent Attorney

Robert A. Patterson
Nathaniel B. Barnwell (1877-1950)
Ben Scott Whaley (1909-1987)
Samuel J. Corbin (1907-1975)

September 17, 2003

2273.008

**Certified Mail – Return Receipt Requested/Delivery Restricted to Addressee**
C T Corp System
75 Beattie Place
Greenville, SC 29601

RE:    AMISUB Development of South Carolina, Inc.
Welchlin, et al. v. Tenet Healthcare Corp., et al.
Case No.: 03-CP-07-1622
Our File No.: 2273.008

Dear Sir/Madame:

Enclosed for service upon AMISUB Development of South Carolina, Inc., please find a file-stamped copy of the Summons and Complaint for the above-referenced matter. According to information we have obtained from the South Carolina Secretary of State, you are the registered agent for this corporation.

Please feel free to contact me if you have any questions.

With best regards, I am

Very truly yours,

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

C.T. Corp. System
75 Beattie Place
Greenville, S.C. 29601

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X  Charles E. McDonald, Jr.
Special Assistant Secretary
CT Corporation System
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
SEP 19 2003

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered    ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☒ Yes

2. Article Number
(Transfer from service label)    7001 1140 0003 6559 6462

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

# BARNWELL WHALEY
# PATTERSON & HELMS, LLC

ATTORNEYS AND COUNSELORS AT LAW
FOUNDED 1938

885 Island Park Drive (29492)
P.O. Drawer H
Charleston, SC 29402-0197
Telephone: (843) 577-7700
Facsimile: (843) 577-7708
Writer's Direct E-Mail:
gdeloss@barnwell-whaley.com

William C. Helms, III
M. Dawes Cooke, Jr.
B. C. Killough †
Thomas B. Pritchard
James H. Elliott, Jr.

J. Gail Rahn
Mark C. Brandenburg
Wendy J. Keefer
Todd M. Musheff
Gerald E. DeLoss
P. Gunnar Nistad

Lucinda Gardner Wichmann
Phillip S. Ferderigos
Andrea H. Brisbin
K. Michael Barfield
Myra V. Whitener

† Registered Patent Attorney

Robert A. Patterson
Nathaniel B. Barnwell (1877-1950)
Ben Scott Whaley (1909-1987)
Samuel J. Corbin (1907-1975)

September 17, 2003

2273.008
**Certified Mail – Return Receipt Requested/Delivery Restricted to Addressee**
C T Corp System
75 Beattie Place
Greenville, SC 29601

RE:     Tenet Healthsystem Medical, Inc.
        Welchlin, et al. v. Tenet Healthcare Corp., et al.
        Case No.: 03-CP-07-1622
        Our File No.: 2273.008

Dear Sir/Madame:

Enclosed for service upon Tenet Healthsystem Medical, Inc., please find a file-stamped copy of the Summons and Complaint for the above-referenced matter. According to information we have obtained from the South Carolina Secretary of State, you are the registered agent for this corporation.

Please feel free to contact me if you have any questions.

With best regards, I am

Very truly yours,

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

C. T. Corp. System
75 Beattie Place
Greenville, SC 29601

2. Article Number
(Transfer from service label)

7001 1140 0003 6559 6479

PS Form 3811, August 2001          Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
Charles E. McDonald, Jr.
Special Assistant Secretary
CT Corporation
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
SEP 19 2003

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

102595-02-M-1540

# BARNWELL WHALEY
# PATTERSON & HELMS, LLC

ATTORNEYS AND COUNSELORS AT LAW
FOUNDED 1938

885 Island Park Drive (29492)
P.O. Drawer H
Charleston, SC 29402-0197
Telephone: (843) 577-7700
Facsimile: (843) 577-7708
Writer's Direct E-Mail:
gdeloss@barnwell-whaley.com

William C. Helms, III
M. Dawes Cooke, Jr.
B. C. Killough †
Thomas B. Pritchard
James H. Elliott, Jr.

J. Gail Rahn
Mark C. Brandenburg
Wendy J. Keefer
Todd M. Musheff
Gerald E. DeLoss
P. Gunnar Nistad

Lucinda Gardner Wichmann
Phillip S. Ferderigos
Andrea H. Brisbin
K. Michael Barfield
Myra V. Whitener

† Registered Patent Attorney

Robert A. Patterson
Nathaniel B. Barnwell (1877-1950)
Ben Scott Whaley (1909-1987)
Samuel J. Corbin (1907-1975)

September 3, 2003

2273.008
Secretary of State
P.O. Box 11350
Columbia, SC 29211

RE:    Tenet Healthcare Corporation
Welchlin, et al. v. Tenet Healthcare Corp., et al.
Case No.

Dear Sir/Madame:

Enclosed for service on a foreign corporation not authorized to do business in the South Carolina, please find a file-stamped copy of the Summons and Complaint for the above-referenced matter, along with a duplicate, as required under law.

The name of the corporation not authorized to do business in South Carolina is Tenet Healthcare Corporation. Their last known address is:

3820 State Street
Santa Barbara, California 93105.

Also enclosed please find our check in the amount of $10.00 as and for the filing fee.

Please feel free to contact me if you have any questions.

With best regards, I am

Very truly yours,

Gerald E. DeLoss

GED/cwb

# BARNWELL WHALEY
# PATTERSON & HELMS, LLC

ATTORNEYS AND COUNSELORS AT LAW
FOUNDED 1938

885 Island Park Drive (29492)
P.O. Drawer H
Charleston, SC 29402-0197
Telephone: (843) 577-7700
Facsimile: (843) 577-7708
Writer's Direct E-Mail:
gdeloss@barnwell-whaley.com

William C. Helms, III
M. Dawes Cooke, Jr.
B. C. Killough †
Thomas B. Pritchard
James H. Elliott, Jr.

J. Gail Rahn
Mark C. Brandenburg
Wendy J. Keefer
Todd M. Musheff
Gerald E. DeLoss
P. Gunnar Nistad

Lucinda Gardner Wichmann
Phillip S. Ferderigos
Andrea H. Brisbin
K. Michael Barfield
Myra V. Whitener

† Registered Patent Attorney

Robert A. Patterson
Nathaniel B. Barnwell (1877-1950)
Ben Scott Whaley (1909-1987)
Samuel J. Corbin (1907-1975)

September 3, 2003

2273.008
**Certified Mail – Return Receipt Requested/Delivery Restricted to Addressee**
C T Corp System
75 Beattie Place
Greenville, SC 29601

RE:   AMISUB (Hilton Head), Inc.
      Welchlin, et al. v. Tenet Healthcare Corp., et al.
      Case No.:
      Our File No.:  2273.008

Dear Sir/Madame:

Enclosed for service upon Amisub (Hilton Head), Inc., please find a file-stamped copy of the Summons and Complaint for the above-referenced matter. According to information we have obtained from the South Carolina Secretary of State, you are the registered agent for this corporation.

Please feel free to contact me if you have any questions.

With best regards, I am

Very truly yours,

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

C T Corp System
75 Beattie Pl.
Greenville SC 29601

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Charles E. McDonald, Jr.
Special Assistant Secretary
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7002 2410 0006 2500 9475

PS Form 3811, August 2001   Domestic Return Receipt   102595-02-M-1540

# BARNWELL WHALEY
# PATTERSON & HELMS, LLC

ATTORNEYS AND COUNSELORS AT LAW
FOUNDED 1938

885 Island Park Drive (29492)
P.O. Drawer H
Charleston, SC 29402-0197
Telephone: (843) 577-7700
Facsimile: (843) 577-7708
Writer's Direct E-Mail:
gdeloss@barnwell-whaley.com

William C. Helms, III
M. Dawes Cooke, Jr.
B. C. Killough †
Thomas B. Pritchard
James H. Elliott, Jr.

J. Gail Rahn
Mark C. Brandenburg
Wendy J. Keefer
Todd M. Musheff
Gerald E. DeLoss
P. Gunnar Nistad

Lucinda Gardner Wichmann
Phillip S. Ferderigos
Andrea H. Brisbin
K. Michael Barfield
Myra V. Whitener

† Registered Patent Attorney

Robert A. Patterson
Nathaniel B. Barnwell (1877-1950)
Ben Scott Whaley (1909-1987)
Samuel J. Corbin (1907-1975)

September 3, 2003

2273.008

**Certified Mail – Return Receipt Requested/ Delivery Restricted to Addressee**
C T Corp System
75 Beattie Place
Greenville, SC 29601

RE:    Hilton Head Health System, L.P.
       Welchlin, et al. v. Tenet Healthcare Corp., et al.
       Case No.:
       Our File No.:  2273.008

Dear Sir/Madame:

Enclosed for service upon Hilton Head Health System, L.P., please find a file-stamped copy of the Summons and Complaint for the above-referenced matter. According to information we have obtained from the South Carolina Secretary of State, you are the registered agent for this corporation.

Please feel free to contact me if you have any questions.

With best regards, I am

Very truly yours,

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY | | |
|---|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature X _E. McDonald, Jr. Special Assistant Secretary Corporation | □ Agent □ Addressee | |
| | B. Received by (*Printed Name*) SEP 5 2003 | C. Date of Delivery | |
| 1. Article Addressed to: | D. Is delivery address different from item 1? □ Yes If YES, enter delivery address below: □ No | | |
| CT Corp System 75 Beattie Pl. Greenville, SC 29601 | 3. Service Type □ Certified Mail    □ Express Mail □ Registered    □ Return Receipt for Merchandise □ Insured Mail    □ C.O.D. | | |
| | 4. Restricted Delivery? (*Extra Fee*)    □ Yes | | |
| 2. Article Number (*Transfer from service label*) | 7002 2410 0006 2500 9444 | | |

PS Form 3811, August 2001         Domestic Return Receipt         102595-02-M-1540

# BARNWELL WHALEY PATTERSON & HELMS, LLC

ATTORNEYS AND COUNSELORS AT LAW
FOUNDED 1938

885 Island Park Drive (29492)
P.O. Drawer H
Charleston, SC 29402-0197
Telephone: (843) 577-7700
Facsimile: (843) 577-7708
Writer's Direct E-Mail:
gdeloss@barnwell-whaley.com

William C. Helms, III
M. Dawes Cooke, Jr.
B. C. Killough †
Thomas B. Pritchard
James H. Elliott, Jr.

J. Gail Rahn
Mark C. Brandenburg
Wendy J. Keefer
Todd M. Musheff
Gerald E. DeLoss
P. Gunnar Nistad

Lucinda Gardner Wichmann
Phillip S. Ferderigos
Andrea H. Brisbin
K. Michael Barfield
Myra V. Whitener

† Registered Patent Attorney

Robert A. Patterson
Nathaniel B. Barnwell (1877-1950)
Ben Scott Whaley (1909-1987)
Samuel J. Corbin (1907-1975)

September 3, 2003

2273.008
**Certified Mail - Return Receipt Requested/Delivery Restricted to Addressee**
C T Corp System
75 Beattie Place
Greenville, SC 29601

RE:    Tenet Healthsystem, Hilton Head, Inc.
       Welchlin, et al. v. Tenet Healthcare Corp., et al.
       Case No.:
       Our File No.: 2273.008

Dear Sir/Madame:

Enclosed for service upon Tenet Healthsystem Hilton Head Island, Inc., please find a file-stamped copy of the Summons and Complaint for the above-referenced matter. According to information we have obtained from the South Carolina Secretary of State, you are the registered agent for this corporation.

Please feel free to contact me if you have any questions.

With best regards, I am

Very truly yours,

# BARNWELL WHALEY
# PATTERSON & HELMS, LLC

ATTORNEYS AND COUNSELORS AT LAW
FOUNDED 1938

885 Island Park Drive (29492)
P.O. Drawer H
Charleston, SC 29402-0197
Telephone: (843) 577-7700
Facsimile: (843) 577-7708
Writer's Direct E-Mail:
gdeloss@barnwell-whaley.com

William C. Helms, III
M. Dawes Cooke, Jr.
B. C. Killough †
Thomas B. Pritchard
James H. Elliott, Jr.

J. Gail Rahn
Mark C. Brandenburg
Wendy J. Keefer
Todd M. Musheff
Gerald E. DeLoss
P. Gunnar Nistad

Lucinda Gardner Wichmann
Phillip S. Ferderigos
Andrea H. Brisbin
K. Michael Barfield
Myra V. Whitener

† Registered Patent Attorney

Robert A. Patterson
Nathaniel B. Barnwell (1877-1950)
Ben Scott Whaley (1909-1987)
Samuel J. Corbin (1907-1975)

September 3, 2003

2273.008

**Certified Mail – Return Receipt Requested/Delivery Restricted to Addressee**
C T Corp System
75 Beattie Place
Greenville, SC 29601

RE:    Tenet of South Carolina, Inc.
       Welchlin, et al. v. Tenet Healthcare Corp., et al.
       Case No.:
       Our File No.: 2273.008

Dear Sir/Madame:

Enclosed for service upon Tenet of South Carolina, Inc., please find a file-stamped copy of the Summons and Complaint for the above-referenced matter. According to information we have obtained from the South Carolina Secretary of State, you are the registered agent for this corporation.

Please feel free to contact me if you have any questions.

With best regards, I am

Very truly yours,

GED/c

Enclos

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CT Corp System
75 Beattie Pl.
Greenville SC 29601

2. Article Number
(Transfer from service label)    7002 2410 0006 2500 9420

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature  Charles E. McDonald, Jr.    ☐ Agent
X Special Assistant Secretary    ☐ Addressee
B. Received by (Printed Name)  C T Corporation System    C. Date of Delivery  SEP 5 2003

D. Is delivery address different from item 1?    ☐ Yes    ☐ No
If YES, enter delivery address below:

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

102595-02-M-1540

IN THE STATE OF SOUTH CAROLINA )IN THE COURT OF COMMON PLEAS

)

IN THE COUNTY OF BEAUFORT )    Case No.:   03-CP-07-1622

)

COREY T. WELCHLIN, D.O. )
and RICHARD W. BANKS, D.O., )
on behalf of themselves and all others )
similarly situated, )

)

Plaintiffs, )

)

vs. )

)

TENET HEALTHCARE CORPORATION, )    **AMENDED**
d/b/a HILTON HEAD REGIONAL MEDICAL )    **SUMMONS**
CENTER AND CLINICS, a/k/a HILTON )
HEAD HOSPITAL; TENET HEALTHSYSTEM )
HILTON HEAD, INC., d/b/a HILTON HEAD )
REGIONAL MEDICAL CENTER AND )
CLINICS, a/k/a HILTON HEAD HOSPITAL; )
TENET SOUTH CAROLINA, INC., d/b/a )
HILTON HEAD REGIONAL MEDICAL )
CENTER AND CLINICS, a/k/a HILTON )
HEAD HOSPITAL; AMISUB (HILTON HEAD), )
INC., d/b/a HILTON HEAD REGIONAL )
MEDICAL CENTER AND CLINICS, a/k/a )
HILTON HEAD HOSPITAL; HILTON HEAD )
HEALTH SYSTEM, L.P., d/b/a HILTON HEAD )
REGIONAL MEDICAL CENTER AND )
CLINICS, a/k/a HILTON HEAD HOSPITAL; )
AMISUB DEVELOPMENT OF SOUTH )
CAROLINA, INC., d/b/a HILTON HEAD )
REGIONAL MEDICAL CENTER AND )
CLINICS, a/k/a HILTON HEAD HOSPITAL; )
TENET HEALTHSYSTEM MEDICAL, INC., )
d/b/a HILTON HEAD REGIONAL MEDICAL )
CENTER AND CLINICS, a/k/a HILTON HEAD )
HOSPITAL; BOARD OF GOVERNORS OF )
HILTON HEAD REGIONAL MEDICAL )
CENTER AND CLINICS; MEDICAL )
EXECUTIVE COMMITTEE OF HILTON HEAD )
REGIONAL MEDICAL CENTER AND CLINICS;)
DENNIS BRUNS; GEORGE WARNER, M.D.; )

And the MEDICAL STAFF OF HILTON HEAD  )
REGIONAL MEDICAL CENTER AND CLINICS,)
                                    )
              Defendants.           )
                                    )
_____ )

TO: EACH OF THE DEFENDANTS ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to respond to the Amended Complaint of the Plaintiffs, a copy of which is herewith served upon you, and to appear and defend by serving a copy of your Answer or other responsive pleading on the subscriber at his office at Barnwell Whaley Patterson & Helms, LLC, 885 Island Park Drive, P. O. Drawer H, Charleston, SC  29402 within the time remaining to answer the original Complaint or within fifteen (15) days after the service hereof, exclusive of the day of such service, whichever period may be longer; and if you fail to answer or otherwise respond to the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Amended Complaint.

                                    BARNWELL WHALEY PATTERSON & HELMS, LLC

                            BY:     _____
                                    Gerald E. DeLoss, Esquire
                                    885 Island Park Drive (29492)
                                    P. O. Drawer H
                                    Charleston, SC  29402
                                    (843) 577-7700
                                    (843) 577-7708 (fax)

                                    **ATTORNEY FOR PLAINTIFFS**

DATED: September 26, 2003
Charleston, South Carolina

2

## CERTIFICATE OF SERVICE

I hereby certify that I have this 26th day of September, 2003, placed a copy of

Plaintiffs' Amended Summons the United States Mail, first class postage prepaid, a copy

of the foregoing document for service upon counsel as follows:

ATTORNEY FOR DEFENDANTS

Stuart M. Andrews, Jr., Esquire
Nelson Mullins Riley & Scarborough, L.L.P.
1330 Lady Street, 3rd Floor
P.O. Box 11070
Columbia, SC  29211


By: _Christiane St. Bailey_
Legal Secretary
Barnwell Whaley Patterson & Helms, LLC
P.O. Drawer H
Charleston, SC  29402-0197

3

IN THE STATE OF SOUTH CAROLINA

IN THE COUNTY OF BEAUFORT

COREY T. WELCHLIN, D.O.
and RICHARD W. BANKS, D.O.,
on behalf of themselves and all others
similarly situated,

           Plaintiffs,

vs.

TENET HEALTHCARE CORPORATION,
d/b/a HILTON HEAD REGIONAL MEDICAL
CENTER AND CLINICS, a/k/a HILTON
HEAD HOSPITAL; TENET HEALTHSYSTEM
HILTON HEAD, INC., d/b/a HILTON HEAD
REGIONAL MEDICAL CENTER AND
CLINICS, a/k/a HILTON HEAD HOSPITAL;
TENET SOUTH CAROLINA, INC., d/b/a
HILTON HEAD REGIONAL MEDICAL
CENTER AND CLINICS, a/k/a HILTON
HEAD HOSPITAL; AMISUB (HILTON HEAD),
INC., d/b/a HILTON HEAD REGIONAL
MEDICAL CENTER AND CLINICS, a/k/a
HILTON HEAD HOSPITAL; HILTON HEAD
HEALTH SYSTEM, L.P., d/b/a HILTON HEAD
REGIONAL MEDICAL CENTER AND
CLINICS, a/k/a HILTON HEAD HOSPITAL;
AMISUB DEVELOPMENT OF SOUTH
CAROLINA, INC., d/b/a HILTON HEAD
REGIONAL MEDICAL CENTER AND
CLINICS, a/k/a HILTON HEAD HOSPITAL;
TENET HEALTHSYSTEM MEDICAL, INC.,
d/b/a HILTON HEAD REGIONAL MEDICAL
CENTER AND CLINICS, a/k/a HILTON HEAD
HOSPITAL; BOARD OF GOVERNORS OF
HILTON HEAD REGIONAL MEDICAL
CENTER AND CLINICS; MEDICAL
EXECUTIVE COMMITTEE OF HILTON HEAD
REGIONAL MEDICAL CENTER AND CLINICS;
DENNIS BRUNS; GEORGE WARNER, M.D.;

)IN THE COURT OF COMMON PLEAS
)
)
)    Case No.:   03-CP-07-1622
)
)
)
)
)
)
)
)
)
)
)
)
)    **AMENDED**
)    **COMPLAINT**
)    **(Jury Trial Demanded)**
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

And the MEDICAL STAFF OF HILTON HEAD )
REGISTERED MEDICAL CENTER AND CLINICS,)
                                      )
                Defendants.           )
_____ )

The Plaintiffs, on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, allege and state as follows:

1.    Plaintiff Corey T. Welchlin is an osteopathic physician, duly licensed to practice medicine in the State of South Carolina, is Board Certified by the American Osteopathic Board of Orthopedic Surgery, is a member of the American Osteopathic Academy of Sports Medicine, and has practiced medicine for over 15 years.

2.    Plaintiff Richard W. Banks is an osteopathic physician, duly licensed to practice medicine in the State of South Carolina, is Board Certified by the American Osteopathic Board of Orthopedic Surgery, and has practiced medicine for over 20 years.

3.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other individuals who are or were osteopathic physicians and whom applied for or could have applied for Medical Staff privileges with Defendants and/or were denied Medical Staff privileges, as a direct result of Defendants' unlawful, intentional, and/or knowing conduct, all as more fully set forth below.

4.    Upon information and belief, Tenet Healthcare Corporation conducts business as Hilton Head Regional Medical Center and Clinics on Hilton Head Island, South Carolina, which is also known as Hilton Head Hospital (hereinafter referred to as the "Hospital"). "Tenet Healthcare Corporation" is not a corporate entity registered with the Secretary of State to conduct business in the State of South Carolina. The Hospital

2

holds the dominant position and market share for the delivery of healthcare services in the relevant market area.

5. Upon information and belief, Tenet Healthsystem Hilton Head, Inc. conducts business as Hilton Head Regional Medical Center and Clinics on Hilton Head Island, South Carolina, which is also known as Hilton Head Hospital (hereinafter jointly referred to as the "Hospital"). The Hospital holds the dominant position and market share for the delivery of healthcare services in the relevant market area.

6. Upon information and belief, Tenet South Carolina, Inc. conducts business as Hilton Head Regional Medical Center and Clinics on Hilton Head Island, South Carolina, which is also known as Hilton Head Hospital (hereinafter jointly referred to as the "Hospital"). The Hospital holds the dominant position and market share for the delivery of healthcare services in the relevant market area.

7. Upon information and belief, AMISUB (Hilton Head), Inc. conducts business as Hilton Head Regional Medical Center and Clinics on Hilton Head Island, South Carolina, which is also known as Hilton Head Hospital (hereinafter jointly referred to as the "Hospital"). The Hospital holds the dominant position and market share for the delivery of healthcare services in the relevant market area.

8. Upon information and belief, Hilton Head Health System, L.P. conducts business as Hilton Head Regional Medical Center and Clinics on Hilton Head Island, South Carolina, which is also known as Hilton Head Hospital (hereinafter jointly referred to as the "Hospital"). The Hospital holds the dominant position and market share for the delivery of healthcare services in the relevant market area.

3

9. Upon information and belief, AMISUB Development of South Carolina, Inc., conducts business as Hilton Head Regional Medical Center and Clinics on Hilton Head Island, South Carolina, which is also known as Hilton Head Hospital (hereinafter jointly referred to as the "Hospital"). The Hospital holds the dominant position and market share for the delivery of healthcare services in the relevant market area.

10. Upon information and belief, Tenet Healthsystem Medical, Inc., conducts business as Hilton Head Regional Medical Center and Clinics on Hilton Head Island, South Carolina, which is also known as Hilton Head Hospital (hereinafter jointly referred to as the "Hospital"). The Hospital holds the dominant position and market share for the delivery of healthcare services in the relevant market area.

11. Upon information and belief, the Board of Governors of Hilton Head Regional Medical Center and Clinics is the governing body of the Hospital and is located and conducts business on Hilton Head Island, South Carolina (hereinafter referred to as the "Board").

12. Upon information and belief, the Medical Executive Committee of Hilton Head Medical Center and Clinics is the Executive Committee of the Medical Staff of the Hospital and is located and conducts business on Hilton Head Island, South Carolina.

13. Dennis Bruns is the Chief Executive Officer of the Hospital, and, upon information and belief, conducts business on Hilton Head Island, South Carolina.

14. Upon information and belief, George Warner, M.D. is the Chief of Staff of the Hospital, and, conducts business Hilton Head Island, South Carolina.

15. The Medical Staff of Hilton Head Medical Center and Clinics is comprised of duly licensed physicians, dentists, and podiatrists designated by the Board, who have

4

been appointed to the Medical Staff and granted Clinical Privileges by the Board to render specific services to the Hospital and conducts business on Hilton Head Island, South Carolina (hereinafter the "Medical Staff.")

16.    On or about December 2001, Dr. Welchlin applied for appointment to the Medical Staff at the Hospital by requesting an application form and materials from the Hospital, in accordance with the Medical Staff Bylaws.  On or about, January 10, 2002, Dr. Welchlin submitted the completed application for appointment to the Hospital, again as specified in the Medical Staff Bylaws.  Upon information and belief, Dr. Welchlin satisfied all legal and valid requirements imposed for Medical Staff appointment as set forth in the Medical Staff Bylaws.

17.    On or about December 2001, Dr. Banks applied for appointment to the Medical Staff at the Hospital by requesting an application form and materials from the Hospital, in accordance with the Medical Staff Bylaws.  On or about, January 21, 2002, Dr. Banks submitted the completed application for appointment to the Hospital, again as specified in the Medical Staff Bylaws.  Upon information and belief, Dr. Banks satisfied all legal and valid requirements imposed for Medical Staff appointment as set forth in the Medical Staff Bylaws.

18.    On or about February 2002, Defendants returned to Plaintiffs their applications for appointment to the Medical Staff.  Shortly thereafter, Plaintiffs resubmitted their applications to Defendants.

19.    On or about October 14, 2002, Plaintiffs received a letter from Dennis Bruns which was addressed to their Practice Administrator, a copy of which is attached hereto as **Exhibit "A,"** in which Plaintiffs' applications for appointment were rejected.

5

Upon information and belief, this letter was sent on behalf of, and with the consent of, Defendants. Attached to the applications was a check which was to pay for the cost of the application fee. This check was returned to Plaintiffs and was not cashed or deposited by Defendants. The sole reason for the rejection of the applications was:

> I understand from my staff that Drs. Banks and Welchlin may not be board certified or eligible. This would be the basis for returning their respective applications.

(Bruns' Letter of 10/14/02, **Exhibit "A"**).

20.    In the same letter of October 14, 2002, Mr. Bruns referred to a purported Medical Staff Bylaw requirement that all physician applicants be either board certified or eligible in a board recognized by the American Board of Medical Specialties (hereinafter referred to as "ABMS").

21.    Under the Medical Staff Bylaws of the Hospital dated July 2001, the basic qualifications for membership on the Medical Staff included the following provision:

> Current certification and/or re-certification, without restriction, by the appropriate medical specialty board(s) recognized by the [ABMS], applicable to these Practitioner's Clinical Privileges, or to be eligible at the time of application for such certification and/or re-certification and to obtain such certification and/or re-certification within five years of eligibility; ..."

(Medical Staff Bylaws, July 2001 at p. 7).

Upon information and belief, the sole basis for the rejection of Plaintiffs' applications for Medical Staff membership was that Plaintiffs allegedly did not satisfy the aforementioned Bylaw provision regarding board certification and/or board eligibility by a board recognized by the ABMS.

6

22.     Upon information and belief, the Medical Staff Bylaws are adopted, approved, and amended by the Active Medical Staff.  The Medical Executive Committee has the responsibility and authority to review and formulate any addition or amendment to the Medical Staff Bylaws.  Amendments or additions voted upon by the Active Medical Staff only become effective when approved by the Board.  Upon information and belief, the Hospital was directly involved in the Bylaw provision set forth above.  The Defendants, in their professional capacities, were each involved in, and responsible for, the illegal Bylaw provision set forth above, relating to board certification or eligibility.

23.     The Court is called upon to take judicial notice that osteopathic physicians or "D.O.s," and allopathic physicians or "M.D.s," have virtually the same pre-professional and professional training and education.  Both osteopaths and allopaths complete four years of basic medical education followed by approximately four to six years of residency training, or post-graduate medical training.  They are both licensed to perform surgery and prescribe medication in all 50 states. In addition, osteopathic physicians receive additional training above and beyond that required of allopathic physicians.  Plaintiffs received equivalent pre-professional and professional training as other physicians on the Medical Staff.

24.     The ABMS recognizes medical boards granting certifications to allopathic doctors ("M.D.s").  Correspondingly, osteopathic doctors ("D.O.s") are certified under Boards recognized by the American Osteopathic Association (hereinafter referred to as "AOA").  The AOA meets all of the same standards as an educational, accrediting, approval body, as does the ABMS.  The Federal government recognizes osteopathic physicians as equal and comparable to allopathic physicians under Federal laws and

7

statutes governing the delivery of health care under Medicare and Medicaid. South Carolina licensing laws and regulations also recognize osteopaths and allopaths as equivalent professionally.

25.    In addition to receiving equivalent education, osteopaths and allopaths practicing in orthopedic surgery receive equivalent post-graduate training. Plaintiffs received equivalent post-graduate training as other physicians on the Medical Staff.

26.    Under the Conditions of Participation for Hospitals in Federal Health Programs, a hospital must ensure the criteria for selection for appointment of a physician to its medical staff is based upon individual character, competence, training, experience and judgment, and must ensure that **under no circumstance is the accordance of staff membership or professional privileges in the hospital dependent solely upon certification, fellowship, or membership in a specialty body or society**. 42 C.F.R. § 482.12(a)(7) (emphasis added).

27.    Based upon the education requirements, post-graduate training, federal statutes and regulations, and state statutes and regulations, osteopaths and allopaths have been accorded equal professional status and hospitals across the country grant medical staff privileges to each group of physicians on an equal basis.

28.    Despite the overwhelming evidence of equivalency between osteopaths and allopaths, Defendants have refused to treat osteopaths equally and have specifically barred osteopaths who do not undergo post-graduate training through an allopathic program. Defendants have jointly and severally acted to prevent Plaintiffs, and others similarly situated, from appointment to the Medical Staff and have critically and irreversibly damaged Plaintiffs', and others similarly situated, ability to treat patients

or prospective patients and injured Plaintiffs', and others similarly situated, economic and professional abilities. Defendants took these actions intentionally, knowingly, grossly negligently and/or recklessly in an attempt to prevent osteopaths from practicing with the Hospital and/or obtaining Medical Staff privileges.

29. Plaintiffs have demanded that they be granted the ability to submit information in support of their applications. In addition, Plaintiffs have demanded that they be granted the right to appeal the decision to reject their applications and obtain review of the rejection of their applications. These are rights which are purportedly set forth in the Hospital Medical Staff Bylaws. Defendants have denied Plaintiffs the opportunity for any type of professional review hearing or procedure. Furthermore, Defendants have not acted in the reasonable belief that their actions were in the furtherance of quality health care. Defendants have not made even reasonable efforts to obtain the facts of the matter and Defendants have not provided Plaintiffs with adequate notice and hearing procedures. Defendants' actions were primarily, if not completely, based upon Plaintiffs' association with osteopathic education, training, and residency programs and/or those sponsored or accredited by the AOA, or lack of association with allopathic education, training, and residency programs and/or those sponsored or accredited by the ABMS and related entities. All such entities or programs are professional societies or associations. Plaintiffs have either exhausted all administrative remedies available to them prior to commencing this lawsuit, or were barred from obtaining such relief by actions beyond their control.

9

## CLASS ACTION AND JURISIDICTIONAL ALLEGATIONS

30.    Plaintiffs reallege and restate the allegations of paragraphs 1 through 29 above, as if fully set forth herein.

31.    The named Plaintiffs bring this action on behalf of themselves and all other similarly situated osteopathic physicians who had applied for Medical Staff membership at the Hospital and were denied and/or who were otherwise eligible to apply for appointment to the Medical Staff at the Hospital, but did not or could not apply, or who were discouraged or prevented from applying for appointment due to their lack of board certification or board eligibility by a board recognized by the ABMS, or other discriminatory and illegal treatment by Defendants.

32.    The named Plaintiffs seek certification of a class of all similarly situated osteopaths who either applied for membership to the Medical Staff at the Hospital, and/or who were eligible for membership at the Hospital, but for the restriction against physicians who were not board certified or board eligible by a board recognized by the ABMS, or who were otherwise discriminated against by Defendants based upon their osteopathic education, training, and/or licensure.

33.    The potential class is so numerous that joinder of all members is impracticable.  The questions of law or fact relating to the class and eligibility for Medical Staff membership at the Hospital are common to the class.  The claims of Dr. Welchlin and Dr. Banks are typical of the claims of each of the members of the class in that each are osteopathic physicians seeking medical staff membership at the Hospital and were denied, or could be denied, based upon the Hospital Bylaw prohibiting Medical Staff membership for physicians not board certified or board eligible by a board

10

recognized by the ABMS. Dr. Welchlin, Dr. Banks and the undersigned counsel will fairly and adequately protect the interests of the class. Finally, to the extent the Court deems this action to be seeking relief primarily other than injunctive relief, the amount in controversy with respect to each class member exceeds $100.00.

34. The Court has jurisdiction over the subject matter and the parties, and venue is proper in Beaufort County, and this Court has the authority to certify, and should certify, this class. Because the Plaintiffs were denied Medical Staff membership based upon their osteopathic training and education and/or purported lack of board certification or board eligibility by a board recognized by the ABMS, they seek relief for themselves and all class members.

## AS TO DEFENDANT MEDICAL STAFF

### FOR A FIRST CAUSE OF ACTION
### Sherman Antitrust Act

35. The Plaintiffs reallege and restate the allegations of Paragraphs 1 through 34 above, as if fully set forth herein.

36. The medical providers, who joined together to form the Medical Staff of the Hospital, are legally separate and distinct economic entities who compete against each other. The Defendants engage in the practice of medicine and treat patients from all over the United States, such that their activities were within the flow of, and substantially affected, interstate trade and commerce. The Medical Staff is in a position to control or limit the access of physicians who wish to apply for Medical Staff privileges by approving Bylaw provisions which limited or barred osteopathic physicians from joining the Medical Staff and engaging in other fraudulent, intentional, and knowing conspiracies to prevent osteopathic physicians from gaining Medical Staff privileges.

11

37.     The Medical Staff entered into a contract, combination, or conspiracy in the restraint of trade, which had an adverse impact upon interstate commerce. Specifically, the Medical Staff conspired to bar osteopathic physicians and/or osteopathic physicians who did not and cannot become board certified and/or who did not and cannot become board eligible with a board recognized by the ABMS. Upon information and belief, other wrongful conduct by the Medical Staff will be shown following discovery. The Medical Staff took such actions in an attempt to prevent or limit competition for their own practices.

38.     The Medical Staff's conduct was such that, as a matter of law, it should be deemed a "group boycott" within the meaning of the Sherman Antitrust Act, 15 U.S.C. § 1, and the Court should deem the Medical Staff's illegal conduct as a "per se" violation of the antitrust statutes. In addition, or in the alternative, the members of the Medical Staff were acting for their own benefit in discriminating against osteopaths, and, therefore, should be considered as a separate legal entity or entities entering into a contract, combination, or conspiracy in the restraint of trade which has an adverse impact or effect on interstate commerce.

39.     The Medical Staff conspired and combined to restrain trade by engaging in conduct including, but not limited to, the following and as will be shown through discovery:

        a.     Engaging in a group boycott, or concerted refusal to deal with osteopathic physicians and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS;

12

b. By drafting and adopting Bylaws which would prohibit or unreasonably limit osteopathic physicians and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS, from obtaining Medical Staff membership at the Hospital;

c. By creating an atmosphere hostile to osteopathic physicians and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS;

d. By only allowing certain osteopathic physicians to obtain Medical Staff membership at the Hospital by completing training and/or education with an allopathic program, thereby preventing "true" osteopaths from practicing on the Medical Staff;

e. By refusing to engage in any procedural review or hearing with respect to applications by osteopathic physicians and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS, including, but not limited to, the applications of Plaintiffs;

f. By summarily denying applications received from osteopathic physicians and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS, such as Plaintiffs, without conducting any action in furtherance of quality care, or in a reasonable attempt to obtain the facts;

13

g.    By refusing to provide notice, hearing, or procedures to osteopathic physicians and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS, including Plaintiffs, who had applied for Medical Staff membership at the Hospital;

h.    By failing to obtain actual facts which would support a conclusion to deny the application for Medical Staff membership by an osteopathic physician and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS, such as Plaintiffs;

i.    By engaging in a policy of discrimination against Plaintiffs and other osteopaths and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS by applying unfair, unequal, and unreasonable procedures in reviewing their applications; and such unequal treatment could reasonably be anticipated by the Defendants to cause osteopathic physicians to refrain from applying for Medical Staff membership at the Hospital; and

j.    By acting based upon a Medical Staff applicant's association with an osteopathic program or training and/or the AOA, or lack of association with an allopathic program or training and/or the ABMS or related entities, each of which are considered professional societies or associations.

14

The foregoing intentional, reckless, grossly negligent and/or wrongful conduct by the Medical Staff amounted to a group boycott or concerted refusal to deal, which are considered illegal, per se, under the Sherman Antitrust Act.

40.     The Medical Staff has no public service or ethical norm rationale for its discriminatory treatment of osteopaths.  As a result of the wrongful conduct of the Medical Staff, jointly and severally, Plaintiffs, and other osteopathic physicians similarly situated have been harmed, and/or will be harmed, and, therefore, request injunctive and declaratory relief against the Medical Staff to prohibit and prevent such harm. Plaintiffs, on behalf of themselves and others similarly situated, respectfully request injunctive and declaratory relief as against Defendants to prevent and prohibit Defendants' illegal and unlawful activities.

41.     Under 15 U.S.C. § 15, any person who shall be injured in his business or property by reason of anything forbidden in the Antitrust Laws may sue therefor and shall recover three-fold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

42.     The wrongful conduct of the Defendants as described above and as will be shown through discovery is directly related to the Plaintiffs' economic injury and the injury of all potential class members in their business, property, or profession.  The Plaintiffs, on behalf of themselves and others similarly situated, are entitled to damages for Defendants' contract, combination, or conspiracy restraining trade, which had an adverse impact on interstate commerce.

43.     Defendants' contract, combination, and conspiracy resulted in the following effects, among others:

15

a.   Prices charged for medical services provided by Defendants were maintained at artificially high and non-competitive levels;

b.   Osteopathic physicians were unable to compete effectively with Defendants and provide patients with a full and fair choice for medical services;

c.   Patients were deprived of free and open competition for the provision of medical services; and

d.   Osteopathic physicians were unable to pursue "pure" osteopathic educational institutions and/or residency programs, sponsored, accredited, or provided by the AOA or other osteopathic associations or societies.

44.   Plaintiffs, on behalf of themselves and others similarly situated, are entitled to treble damages as provided by Federal law and the cost of suit, including reasonable attorney's fees as provided thereunder.

## AS TO ALL DEFENDANTS

### FOR A SECOND CAUSE OF ACTION
### South Carolina Antitrust Act

45.   Plaintiffs reallege and restate the allegations of paragraphs 1 through 44 above, as if fully set forth herein.

46.   The actions by and on behalf of the Medical Staff described above constitute an arrangement, contract, agreement, trust, or combination between two or more persons. In addition, Defendants Hospital, Board, Medical Executive Committee, Dennis Bruns, Dr. Warner, and all other Defendants, were directly and actively involved in the procedures, actions, and other misconduct which barred or limited osteopathic

16

physicians and/or osteopathic physicians who may not be board certified or board eligible with a board recognized by the ABMS, from obtaining Medical Staff privileges. The concerted action of all Defendants amounted to an arrangement, contract, agreement, trust, or combination between two or more persons.

47.    The actions of Defendants were intended to, or actually did, lessen full and free competition for healthcare and related medical services and the costs and benefits associated with full and free competition. The actions impacted the public and the public's interest in healthcare and related medical services. The actions impacted the public and the public's interest in fostering medical education and training in osteopathic institutions, programs, societies, and associations.

48.    Defendants' actions directly and proximately caused injury to Plaintiffs, and other osteopathic physicians similarly situated.

49.    Plaintiffs, on behalf of themselves and other osteopathic physicians similarly situated, have been irreparably harmed and have no adequate remedy at law.

50.    Plaintiffs, on behalf of themselves and other osteopathic physicians similarly situated, are entitled to an injunction prohibiting Defendants from engaging in such unlawful and detrimental conduct and for their costs of bringing suit, including reasonable attorneys' fees.

## FOR A THIRD CAUSE OF ACTION
### Violation of the Hill-Burton Act

51.    The Plaintiffs reallege restate the allegations of paragraphs 1 through 50 above, as if fully set forth herein.

52.    Under the provisions of the Hill-Burton Act, 42 U.S.C. § 291, et seq., Federal funds are allotted to the States in order to assist them in carrying out programs

17

for the construction and modernization of hospitals and other medical facilities. In order for a facility to receive Hill-Burton funds, the facility must provide assurances that, among other things, the facility, or portion thereof to be constructed or modernized, will be made available to all persons residing in a territorial area of the applicant facility. Under a separate section of the Hill-Burton Act, an action to effectuate compliance with any such assurance may be brought by a person other than the Secretary of Health and Human Services.

53.    Upon information and belief, Hospital and its predecessors received Hill-Burton Funds for the construction and/or modernization of that facility.

54.    All administrative requirements and other prerequisites to filing suit under the Hill-Burton Act have been satisfied or exhausted, or pursuing them would be futile.

55.    The actions and conduct by Defendants, as described above, amount to a violation of the Hospital's assurances that the facility, or a portion thereof, will be made available to all persons residing in the territorial area of the applicant, and amounts to a discriminatory attempt to prohibit or bar osteopathic physicians from practicing at the facility in violation of the Hill-Burton Act.  Moreover, Defendants' violation of these assurances extends to both osteopathic physicians and their patients, because by denying Medical Staff membership to osteopathic physicians, Defendants are effectively denying the osteopathic physicians' patients access to the Hospital and to a full and fair choice for medical services.

56.    Based upon the misconduct of Defendants, Plaintiffs and other osteopathic physicians similarly situated, are left with no adequate remedy at law, and are irreparably harmed.  Accordingly, Plaintiffs, on behalf of themselves and others

18

similarly situated, request an injunction against Defendants barring current and future violations of the Hill-Burton Act and the assurances required thereunder.

57.    In addition, or in the alternative, the activities of the Defendants, as described above, amount to an illegal restraint and violations of the assurances provided that the facility, or a portion thereof to be constructed to be modernized, be made available to all persons residing in the territorial area of the applicant. Defendants' conduct directly and proximately damaged Plaintiffs.

58.    Pursuant to the provisions of the Hill-Burton Act, Plaintiffs, on behalf of themselves and other osteopathic physicians similarly situated, are entitled to damages against Defendants in an amount to be determined at trial for Defendants' violation of the Hill-Burton Act, and for reasonable attorneys' fees.

## FOR A FOURTH CAUSE OF ACTION
### Intentional Interference with Contractual Relations

59.    Plaintiffs reallege and restate the allegations of paragraphs 1 through 58 above, as if fully set forth herein.

60.    Defendants' wrongful conduct, as described above, amounted to intentional interference with the Plaintiffs' current and prospective contractual relations, based upon improper purposes and/or by improper methods, as described above. The aforementioned improper purposes and/or improper methods, directly and proximately caused injury to Plaintiffs. Plaintiffs and other osteopathic physicians similarly situated had a protectible right with respect to their relationship with current and/or prospective patients. Defendants' wrongful conduct was not for purposes of Defendants' own pursuit of contractual rights with those third parties. The prospective and current contractual relations related to relationships with patients and prospective patients,

19

which were terminated and/or lost, due to the wrongful conduct of Defendants. Defendants' actions were devious, improper and unrighteous.

61.    Based upon the wrongful conduct of Defendants in denying, prohibiting and interfering with Plaintiffs' current and/or prospective patients, Plaintiffs on behalf of themselves and other osteopathic physicians similarly situated have suffered irreparable harm for which they cannot be adequately made whole.  Accordingly, Plaintiffs, on behalf of themselves and others similarly situated, respectfully request that the Court enter an Order granting them injunctive relief against Defendants prohibiting any wrongful interference with contractual relations and barring Defendants from utilizing the illegal means and procedures utilized by Defendants.

62.    In addition, or in the alternative, Plaintiffs, on behalf of themselves and others similarly situated, respectfully request the Court to enter an Order awarding them actual and punitive damages in an amount to be determined at trial for the loss of current and prospective patients.

## FOR A FIFTH CAUSE OF ACTION
### South Carolina Unfair Trade Practices Act

63.    Plaintiffs reallege and restate the allegations of paragraphs 1 through 61 above, as if fully set forth herein.

64.    Under the South Carolina Unfair Trade Practices Act ("SCUTPA"), South Carolina Code §§ 39-5-10, et seq., unfair methods of competition and unfair deceptive acts or practices in the conduct of any trade or commerce are declared unlawful.  An action may be brought under SCUTPA and attorneys' fees may be awarded along with the costs of suit.

20

65.     The aforementioned enumerated actions by Defendants, in willfully and knowingly preventing or prohibiting Plaintiffs and other osteopathic physicians similarly situated from obtaining Medical Staff membership at the Hospital, amounted to an unfair or deceptive act or practice in the conduct of a trade or commerce as prohibited under SCUTPA.  Specifically, said Defendants engaged in conduct that amounted to unfair methods of competition and deceptive practices in the conduct of the medical profession or trade, which, in turn, had a direct impact upon the public's interest in timely, effective, cost-efficient, and quality healthcare.  Further, said Defendants' actions have the potential for repetition as they have occurred in the past and the Medical Staff Bylaws set forth a procedure that creates a definite potential for repetition of the unfair and deceptive acts.

66.     In accordance with the SCUTPA, Plaintiffs, on behalf of themselves and others similarly situated, are entitled to injunctive and/or declaratory relief against Defendants, jointly and severally, to prevent and prohibit current and future unfair methods of competition and unfair or deceptive acts or practices by Defendants. Plaintiffs and others similarly situated are irreparably harmed and have no adequate remedy at law in order to make them whole.  Further, Plaintiffs are entitled to their costs and attorneys' fees for bringing suit.

### FOR A SIXTH CAUSE OF ACTION
### Civil Conspiracy

67.     Plaintiffs reallege and restate the allegations of paragraphs 1 through 66 above, as if fully set forth herein.

21

68.    Two or more of Defendants combined and conspired for the purpose of injuring Plaintiffs and others similarly situated, by engaging in covert and overt conduct, including but not limited to those actions set forth above, and the following:

a.    Conspiring to prevent Plaintiffs from practicing with Hospital;

b.    Conspiring to prevent or limit Plaintiffs from providing treatment to patients, including follow-up care and treatment;

c.    Conspiring to prevent Plaintiffs from competing with Defendants in the relevant market area; and

d.    Conspiring to portray or represent to patients, potential patients, and the public that osteopathic physicians were "second class" providers, or were somehow less qualified to provide medical care.

69.    Defendants conspired to cause, and did proximately cause, special damages to Plaintiffs and others similarly situated in the form of loss of income, loss of wages, loss of standing in the community, loss of ability to earn a living, and such other special damages as will be shown at trial.

70.    Defendants' conspiracy involved overt and covert activities, including those set forth above, and those which will be shown by direct and circumstantial evidence following discovery.

71.    Defendants' actions in furtherance of the conspiracy may have involved both lawful and unlawful acts, but in every case Defendants' object was to ruin or damage the business of Plaintiffs and others similarly situated.

22

72.     Defendants' conspiracy involved acts pursuant to a common design, as described above, which was in furtherance of illegal and fraudulent activity and in a direct attempt to injure Plaintiffs.

73.     As a result of Defendants' conspiracy, Plaintiffs were injured and suffered special damages.  Accordingly, Plaintiffs request the Court to enter judgment jointly and severally against Defendants for Plaintiffs' damages related to such conspiracy.

WHEREFORE, the Plaintiffs pray that this Court certify this class, enter the declaratory and injunctive relief set forth above, award them and the class members damages, including interest on such amounts, treble damages where provided by statute, punitive damages, their attorney's fees and costs, and such other and further relief as the Court deems just and proper.

BARNWELL WHALEY PATTERSON & HELMS, LLC

BY:_____

Gerald E. DeLoss, Esquire
Myra V. Whitener, Esquire
885 Island Park Drive (29492)
P.O. Drawer H
Charleston, SC 29402
(843) 577-7700
(843) 577-7708 – Fax

ATTORNEYS FOR PLAINTIFFS

September 26, 2003
Charleston, South Carolina

23

**Exhibit "A"**



HILTON HEAD
MEDICAL CENTER
AND CLINICS

Smart Medicine. Special Treatment.

*Dennis R. Bruns, FACHE*
*President and Chief Executive Officer.*

October 14, 2002

Larry R. Boller, MBA
Low Country Orthopedics & Sports Medicine
South Island Square
841 William Hilton Parkway, Suite R
Hilton Head Island, South Carolina 29928

Re: Application for Staff Membership/Clinical Privileges
     Drs. Banks and Welchlin

Dear Mr. Boller:

Hilton Head Hospital has received your undated letter requesting information regarding the application for staff membership for Richard Banks, D.O. and Corey Welchlin, D.O. We have also received a call from one of Dr. Welchlin's and Dr. Banks' office staff in Minnesota inquiring about an application from each of them for locum tenens status.

The Bylaws of the Medical Staff include osteopathic physicians among those who may be awarded medical staff membership and clinical privileges at this Hospital. Article II, Section 2.A.4 of the Bylaws requires, however, that all physician applicants for privileges demonstrate current registration or recertification by a specialty board recognized by the American Board of Medical Specialties and applicable to the clinical privileges sought. A physician who is board eligible at the time of application may be considered for medical staff membership. Such physicians must obtain certification or recertification within five (5) years of achieving eligibility.

An individual seeking temporary privileges for locum tenens coverage must satisfy all of the qualifications for medical staff membership set forth in Article II, Section 2 of the Bylaws. This would include the requirement for board certification or board eligibility as the case may be.

I understand from my staff that Drs. Banks and Welchlin may not be board certified or eligible. This would be a basis for returning their respective applications.

I trust this letter is responsive to your inquiry. Please contact me if you have questions.

I remain,

Very truly yours

Dennis Bruns
Chief Executive Officer

cc: Dr. George Warner, Chief of Staff



25 Hospital Center Boulevard • P.O. Box 21117 • Hilton Head Island, SC 29925 • (843) 689-8206 • Fax (843)681-3659
E-mail: denny.bruns@tenethealth.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this 26th day of September, 2003, placed a copy of Plaintiffs' Amended Complaint the United States Mail, first class postage prepaid, a copy of the foregoing document for service upon counsel as follows:

ATTORNEY FOR DEFENDANTS

Stuart M. Andrews, Jr., Esquire
Nelson Mullins Riley & Scarborough, L.L.P.
1330 Lady Street, 3rd Floor
P.O. Box 11070
Columbia, SC  29211

By: _Christiane M. Baily_
**Legal Secretary**
Barnwell Whaley Patterson & Helms, LLC
P.O. Drawer H
Charleston, SC  29402-0197

24